US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

**MAR 1 4 2019**

DOUGLAS F. YOUNG, Clerk
By
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF ARKANSAS FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA for the Use and Benefit of IHP INDUSTRIAL INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. *19-5050 PKH* |
| AEGIS SECURITY INSURANCE COMPANY | ) ) ) | |
| Defendant. | ) ) | |

### ORIGINAL COMPLAINT

Comes now the Plaintiff, United States of America for the Use and Benefit of IHP Industrial Inc. ("Use Plaintiff" or "IHP"), pursuant to 40 U.S.C.A § 3133, *et seq.* ("the Miller Act"), and hereby files this Original Complaint against AEGIS Security Insurance Company ("AEGIS") to seek payment under a payment bond issued by AEGIS in relation to a federal construction project at the VA Hospital in Fayetteville, Arkansas.   In support hereof, Use Plaintiff alleges:

### PARTIES AND JURISDICTION

1.     Use Plaintiff IHP is a Missouri corporation with its principal place of business located at St. Joseph, Missouri.  IHP is authorized to conduct business in the State of Arkansas, where its offices are located in Sherwood, Arkansas.

2.     Defendant AEGIS is a foreign corporation authorized and existing under the laws of the State of Pennsylvania, duly authorized to engage in the business of executing surety

6613893

bonds, with its principal office and place of business in 4507 N. Front St., Suite 200, Harrisburg, Dauphin County, PA 17110. AEGIS is authorized to conduct business in this State and may be served via its registered agent, Jon Adams, at 10 N. Shackelford Plaza, Suite 200, Little Rock, Arkansas 72211.

      3.     This action arises, and this Court has personal and subject matter jurisdiction and has proper venue, under the Miller Act, 40 U.S.C.A § 3133(b)(3).

## ALLEGATIONS

      4.     At relevant times, BES Design/Build, LLC ("BES") contracted with the United States of America (the "Contract") to furnish materials and perform the labor for the construction and/or remodel of one or more buildings and/or public works of the United States, *inter alia*, a project called the Renovate 3-B Clinic Step-Down Unit 564-14-102-VA256-15-C-0121, at the Veterans Administration "VA" Hospital in Fayetteville, Arkansas, Project: 15527 (the "Project").

      5.     On or about October 16, 2015, pursuant to the terms of the Contract, BES, as principal, and AEGIS as surety, executed and delivered to the United States of America its Payment Bond No. 10 026 688 in the penal sum of $1,865,864.00, OMB Control Number: 9000-0045, conditioned as required by the Miller Act, for the protection of all persons supplying labor and materials in the prosecution of the work provided for in the Contract (the "Bond"). A true and correct copy of the Bond is attached hereto as **Exhibit A.**

      6.     On or about December 7, 2017, BES and IHP entered into a subcontract, Contract No. SC-15527-032, whereby IHP agreed to furnish certain labor and materials, including plumbing fixtures and medical gas, required for the Project, in accordance with the specifications

contained in the Subcontract, for the initial consideration of $94,500.00 (the "Subcontract"). A true and correct copy of relevant portions of the Subcontract is attached hereto as **Exhibit B**.

7.     IHP timely performed its obligations, providing materials and labor under the Subcontract from the period ending January 25, 2018 through March 28, 2018, at which time IHP's work was suspended at BES's direction – due to no fault of IHP.  IHP complied with all relevant terms and conditions in the Subcontract so as to warrant payment to IHP from BES. Including appropriately executed change orders, the adjusted contract price for IHP's work completed through March 28, 2018, is $97,712,31.[1]

8.     To date, IHP has provided labor and materials, including plumbing, fixtures, med gas, labor and other requirements under the Subcontract and as required for the Project.

9.     BES has not paid IHP any amount for said labor and materials, leaving a current balance owed to IHP of $97,712.31.

10.     Notwithstanding IHP's proper demands for payment and offers to resume work once certain predicate work has been completed by BES, BES has wrongly refused to pay IHP, and there is now justly due and owing to IHP the sum of $97,712.31, the same being the reasonable value of the labor performed and materials supplied by IHP to the Project.

11.     BES breached the Subcontract by failing and refusing to pay IHP the moneys due to it, as set forth above.

12.     IHP has satisfied all conditions precedent for the bringing and maintenance of this action under the Miller Act against AEGIS.

13.     This action is filed within one year of March 28, 2018, the last date of work performed on the Project pursuant to the Subcontract. More than ninety (90) days have expired since IHP provided it material and labor, without payment by BES.

---

[1] The adjusted total Subcontract price is higher, after properly executed change orders.

14.    AEGIS is liable for all amounts IHP is owed by BES for IHP's materials and labor provided pursuant to the Subcontract – whether based on BES's breach of contract or pursuant to an alternate equitable theory, including *quantum meruit*.

15.    Judgment should be entered against AEGIS for all sums established by IHP at trial.

16.    IHP reserves the right to amend this Complaint, to assert additional damages against AEGIS or BES, to seek declaratory relief based on BES's wrongful suspension of IHP's work and to establish its rights to resume work and/or recover compensation for amounts BES has previously or may hereafter wrongly prevent it from recovering under the Subcontract.

17.    IHP requests a jury trial on all issues so triable.

WHEREFORE, the United States of America for the Use and Benefit of IHP Industrial Inc., by and through its undersigned counsel, hereby prays for judgment against AEGIS Security Insurance Company for the sum of $97,712.31, or such other amount established by the proof, together with pre- and post-judgment interest from March 28, 2018 and through satisfaction of any judgment rendered herein, for the costs of this action, including reasonable attorney fees, and for such other relief to which it is entitled.

Respectfully submitted,

IHP INDUSTRIAL INC., Plaintiff

By: _____

John M. Scott (AR Bar No. 97202)
CONNER & WINTERS, LLP
4375 N. Vantage Dr., Suite 405
Fayetteville, AR  72703
Telephone:  (479) 582-5711
Facsimile: (479) 587-1426
jscott@cwlaw.com

4

Bond No.    B10 026 688

| **PAYMENT BOND** (See Instructions on reverse) | **DATE BOND EXECUTED** (Must be same or later than date of contract) October 16, 2015 | **OMB Number: 9000-0045** Expiration Date: 6/30/2016 |

PAPERWORK REDUCTION ACT STATEMENT: Public reporting burden for this collection of information is estimated to average 60 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspects of this collection of information, including suggestions for reducing this burden, to U.S. General Services Administration, Regulatory Secretariat (MVCB)/IC 9000-0045, Office of Governmentwide Acquisition Policy,1800 F Street, NW, Washington, DC 20405.

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) |
|---|---|
| BES Design/Build, LLC 766 Middle Street Fairhope, AL  36532 | ☐ INDIVIDUAL ☐ PARTNERSHIP ☐ JOINT VENTURE ☒ CORPORATION  LLC |
| | STATE OF INCORPORATION AL |

| SURETY(IES) (Name(s) and business address(es)) | PENAL SUM OF BOND (Whole numbers only) | | | |
|---|---|---|---|---|
| Aegis Security Insurance Company P. O. Box 3153 Harrisburg, PA  17105 | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| | 1 | 865 | 864 | 00 |
| | CONTRACT DATE September 21, 2015 | CONTRACT NO. VA256-15-C-0121 Purchase Request/PO No. 564-C50003 | | |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| BES Design/Build, LLC | | **PRINCIPAL** | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. Wm. Walter Bolton Partner | 2. | 3. | |

| | | **INDIVIDUAL SURETY(IES)** | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. | (Seal) | 2. | (Seal) |
| NAME(S) (Typed) | 1. | | 2. | |

| | | **CORPORATE SURETY(IES)** | | |
|---|---|---|---|---|
| SURETY A | NAME & ADDRESS | Aegis Security Insurance Company P. O. Box 3153 , Harrisburg, PA 17105 | STATE OF INC. PA | LIABILITY LIMIT $ 5,340,000 |
| | SIGNATURE(S) | 1. | 2. | |
| | NAME(S) & TITLE(S) (Typed) | 1. Richard V. Dobbs, Jr. Attorney-In-Fact | 1. Catharine Roberts Witness | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is NOT usable

**STANDARD FORM 25A (REV. 8/2014)**
Prescribed by GSA-FAR (48 CFR) 53.2228(c)



EXHIBIT
A

| CORPORATE SURETY(IES) *(Continued)* | | | | | |
|---|---|---|---|---|---|
| **SURETY B** — NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | | |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |
| **SURETY C** — NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | | |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |
| **SURETY D** — NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | | |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |
| **SURETY E** — NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | | |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |
| **SURETY F** — NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | | |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |
| **SURETY G** — NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | | |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under 40 U.S.C. Chapter 31, Subchapter III, Bonds. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)."

In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

**STANDARD FORM 25A (REV. 8/2014) BACK**

# AEGIS SECURITY INSURANCE COMPANY
## POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, THAT AEGIS SECURITY INSURANCE COMPANY does hereby make, constitute and appoint: Richard V. Dobbs, Jr.

**Surety Bond Number:** B10 026 688

**Principal:** BES Design/Build, LLC

**Obligee:** USA, Department of Veterans Affairs, Veterans Health Administration, Network Contracting Office 16

its true and lawful Attorney-in-Fact, to make, execute and deliver on its behalf surety bonds, undertaking and other instruments of similar nature as follows: $2.5 MILLION

This Power of Attorney is granted and sealed under and by the authority of the following Resolution adopted by the Board of Directors of the Company on the 4th day of February 1993.

"Resolved, That the President, any Vice President, the Secretary and any Assistant Secretary appointed for that purpose by the officer in charge of surety operations shall each have authority to appoint individuals as Attorney-in-Fact or under other appropriate titles with authority to execute on behalf of the Company, fidelity and surety bonds and other documents of similar character issued by the Company in the course of its business. On any instrument making or evidencing such an appointment, the signatures may be affixed by facsimile. On any instrument conferring such authority or on any bond or undertaking of the Company, the seal or facsimile thereof may be imposed or fixed or in any other manner reproduced; provided, however, that the seal shall not be necessary to the validity of any such instrument or undertaking."

"Resolved, That the signature of each of the following officers; President, Vice President, any Assistant Vice President, any Secretary or Assistant Secretary and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any Certificate relating thereto, appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for the purpose only of executing and attesting bonds and undertaking and other writings upon the Company and any such power required and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or undertaking to which it is attached.

IN WITNESS WHEREOF, AEGIS SECURITY INSURANCE COMPANY has caused its official seal to be hereunto affixed, and these presents to be signed by its President this 19th day of July 2010.

AEGIS SECURITY INSURANCE COMPANY

BY: _Darleen J. Fritz_

DARLEEN J. FRITZ
President

Commonwealth of Pennsylvania }
} s.s.: Harrisburg
County of Dauphin }

On this 19th day of July 2010 before me personally came Darleen J. Fritz to me known, who being by me duly sworn, did depose and say that she is President of AEGIS SECURITY INSURANCE COMPANY, the corporation described herein and which executed the above instrument; that she knows the seal of the said corporation, that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation and that she signed her name thereto by like order.

_Rebecca Liddick_

REBECCA LIDDICK
Notary Public
My Commission Expires July 25, 2017

I, the undersigned, Assistant Secretary of AEGIS SECURITY INSURANCE COMPANY, a Pennsylvania corporation, DO HEREBY CERTIFY that the foregoing and attached Power of Attorney remains in full force and has not been revoked: and furthermore that the Resolution of the Board of Directors, set forth in the said Power of Attorney, is now in force.

Signed and sealed at the City of Harrisburg, in the Commonwealth of Pennsylvania, dated this 16th day of October, 2015

_Deborah A. Good_

DEBORAH A. GOOD
Secretary

**AEGIS SECURITY INSURANCE COMPANY**
**STATUTORY STATEMENTS OF ADMITTED ASSETS, LIABILITIES AND CAPITAL AND SURPLUS**
**DECEMBER 31, 2014 AND 2013**

| | 2014 | 2013 |
|---|---|---|
| **ADMITTED ASSETS** | | |
| Bonds | $ 42,472,807 | $ 16,702,092 |
| Preferred stocks | 600,815 | 665,128 |
| Common stocks - non-affiliate | 8,503,670 | 12,911,897 |
| Common stocks - affiliate | 15,656,804 | 15,417,481 |
| Mortgage loans on real estate | - | 366,447 |
| Real estate occupied by the company, net | 2,218,922 | 2,284,797 |
| Real estate held for sale, net | - | 209,000 |
| Cash and short-term investments | 13,968,422 | 33,187,670 |
| Other invested assets | 1,198,468 | 2,072,454 |
| Total cash and invested assets | 84,619,908 | 83,816,966 |
| | | |
| Accrued investment income | 454,351 | 233,990 |
| Premium receivable | 10,015,497 | 9,455,707 |
| Reinsurance recoverable on paid losses | 2,864,564 | 1,488,869 |
| Contract surety - funds administration receivable | - | 1,130,348 |
| Net admitted deferred tax asset | 2,055,946 | 1,679,200 |
| Other assets | 53,875 | 54,120 |
| Receivable from parent, subsidiaries and affiliates | 402,358 | - |
| Total assets | $ 100,466,499 | $ 97,859,200 |
| | | |
| **LIABILITIES AND CAPITAL AND SURPLUS** | | |
| Liabilities: | | |
| Losses | $ 13,422,255 | $ 13,870,615 |
| Loss adjustment expenses | 3,677,363 | 2,932,293 |
| Reinsurance payable on paid loss and loss adjustment expense | 837,825 | 935,564 |
| Commissions payable | 1,782,604 | 408,592 |
| Accounts payable and accrued expenses | 645,466 | 540,676 |
| Accrued: | | |
| Taxes, licenses and fees | 520,901 | 394,999 |
| Federal income taxes | 28,329 | 262,694 |
| Unearned premiums | 21,100,270 | 20,036,359 |
| Advance premiums | 7,900 | 240,207 |
| Ceded reinsurance premiums payable | 1,823,329 | 2,811,785 |
| Amounts withheld for account of others | 3,882,418 | 3,790,081 |
| Payable for securities | 141,567 | - |
| Payable to affiliate | - | 150,300 |
| Total liabilities | 47,870,227 | 46,374,165 |
| | | |
| Capital and surplus: | | |
| Common stock, par value $1.40 per share; 5,000,000 shares authorized, 3,000,000 issued and outstanding | 4,200,000 | 4,200,000 |
| Paid-in surplus | 5,266,827 | 5,266,827 |
| Unassigned surplus | 43,129,445 | 42,018,208 |
| Total capital and surplus | 52,596,272 | 51,485,035 |
| | | |
| Total liabilities, capital and surplus | $ 100,466,499 | $ 97,859,200 |



**Contract**
**SC-15527-032**

BES Design Build, LLC
766 Middle St.
Fairhope, Alabama 36532
Phone: (251) 990-5778
Fax: (251) 990-3716

Project: 15527 - AR - Fayetteville -Renovate 3B Clinic Step-Down Unit -
564-14-102 - VA256-15-C-0121
1100 N. College Ave
Fayetteville, Arkansas 72703

## Plumbing & Med Gas

| | | | |
|---|---|---|---|
| **DATE CREATED:** | 12/06/2017 | | |
| **CONTRACT COMPANY:** | IHP Industrial, Inc. - Little Rock | **CREATED BY:** | Jeremy Asarisi (BES Design/Build, LLC) |
| | 3201 East Kiehl Avenue - ~~PO Box 936~~ Sherwood, AR 72120 | | 766 Middle St |
| | ~~N Little Rock, Arkansas 72115~~ | | Fairhope, Alabama 36532 |
| | Phone: (501) 835-5794 | | |
| **CONTRACT STATUS:** | Draft | **EXECUTED:** | No |
| **START DATE:** | | **ESTIMATED COMPLETION DATE:** | |
| **SIGNED CONTRACT RECEIVED DATE:** | | **ACTUAL COMPLETION DATE:** | |
| **DEFAULT RETAINAGE:** | | | |

**SDS (Material Safety Data Sheet) Supplied:** No

**DESCRIPTION:**
To complete plumbing & med gas scopes per quote dated 11/21/17

**INCLUSIONS:**
Plumbing fixture purchase and installation per quote

Med gas tie-ins, testing, inspection, certifications per quote

- SF1413 – Statement and Acknowledgment – Note this must be reported within three (3) days of contract signing on all Tier subcontractors
- Certificate of Insurance per our requirements
- W-9
- Buy American Act
- OSHA 10 for all laborers on the job
- Provide personnel with all proper PPE as required
- TB Testing if working within a Medical Setting
- Security Clearance if required
- Paid Sick Leave for all Federal Contractors per Executive Order 13706
- Certified Payroll must be turned in via email every Tuesday, following the prior week of work to (certifiedpayroll@besdesignbuild.com) and checked against the Superintendent's published Daily Report before submitting.
- Davis-Bacon Weekly Wages
- Prime Contract and All Amendments
- Any Required Licensing
- Vendors/Suppliers List – Must include all Tier Subcontractors
- Scheduling of all work to be coordinated with BES Design/Build's on-site Project Superintendent
- Send to BES Design/Build, LLC, PO BOX 2263 Fairhope, AL 36533 or accountspayable@besdesignbuild.com. Invoices are due the 20th of each month and must include Required Lien Waivers and Required Warranties.

These are Binding Federal Legal Requirements and apply to you and all your Tiered Subcontractors. **In order to ensure timely processing of your payment applications,** you must adhere to these requirements and this contract. Please ensure that all the above items are completed before invoicing.

Please initial each item and sign below to confirm that you understand and will adhere to said requirements.

_____     12/07/2017
Signature  John Fitzpatrick- Vice President   Date

**EXHIBIT**
**B**

DocuSign Envelope ID: 6AAF14FA-2245-4D24-ACE8-E8CEBB911770



**Contract**
**SC-15527-032**

**EXCLUSIONS:**
Overtime excluded

**ATTACHMENTS:**

| # | COST CODE | DESCRIPTION | TYPE | AMOUNT |
|---|-----------|-------------|------|--------|
| 1 | 22-00 00 - Plumbing | Plubming Fixtures & Med Gas | Sub Labor | $ 94,500.00 |
| | | | Grand Total: | $ 94,500.00 |



Printed On: 12/06/2017  04 :17 PM



**Contract**
**SC-15527-032**

# BES Design/Build, LLC Subcontract Articles

## ARTICLE 1

### INTENTIONALLY LEFT BLANK

## ARTICLE 2

### SCOPE OF WORK

**2.1     SUBCONTRACTOR'S WORK.** The Contractor contracts with the Subcontractor as an independent contractor, to perform the work described in Article 16. The Subcontractor shall perform such work (hereinafter called the "Subcontractor's Work") under the general direction of the Contractor and in accordance with this Agreement and the Contract Documents.

**2.2     CONTRACT DOCUMENTS.** The Contract Documents which are binding on the Subcontractor are as set forth in Paragraph 16.5. Upon the Subcontractor's request the Contractor shall furnish a copy of any part of these documents. Nothing in the Contract Documents shall be construed to create a contractual relationship between persons or entities other than the Contractor and Subcontractor.

**2.3     "FLOW-DOWN PROVISIONS"** are those terms and conditions of the Prime Contract and/or Delivery Order/ Task Order that also apply to the Subcontractor. A copy of the *Contractor's* agreement with the Owner, known as the Prime Agreement (from which compensation amounts may be deleted), is made a part of this Agreement and is available upon request. By signing this document, the Consultant acknowledges that the Prime Agreement with the Owner flows down to the Consultant's firm, which is a stipulation in the Prime Agreement.

**2.5     CONFLICTS.** In the event of a conflict between this Agreement and the Contract Documents, this Agreement shall govern.

## ARTICLE 3

### SCHEDULE OF WORK

**3.1     TIME IS OF ESSENCE.** Time is of the essence for both parties, and they mutually agree to see to the performance of their respective work and the work of their subcontractors so that the entire Project may be completed in accordance with the Contract Documents and the Schedule of Work. The Contractor shall prepare the Schedule of Work and revise such schedule as the Work progresses.

**3.2     DUTY TO BE BOUND.** Both the Contractor and the Subcontractor shall be bound by the Schedule of Work.
The Subcontractor shall provide the Contractor with any requested scheduling information for the Subcontractor's Work. The Schedule of Work and all subsequent changes thereto shall be submitted to the Subcontractor in advance of the required performance.

**3.3     SCHEDULE CHANGES.** The Subcontractor recognizes that changes will be made in the Schedule of Work and agrees to comply with such changes.

**3.4     PRIORITY OF WORK.** The Contractor shall have the right to decide the time, order and priority in which the various portions of the Work shall be performed and all other matters relative to the timely and orderly conduct of the Subcontractor's Work. The Subcontractor shall commence its work within two days of notice to proceed or the agreed upon time from the Contractor and if such work is interrupted for any reason the Subcontractor shall resume such work within two working days from the Contractor's notice to do so.

## ARTICLE 4

### CONTRACT PRICE

The Contractor agrees to pay to the Subcontractor for the satisfactory performance of the Subcontractor's Work the amount stated in Article 1 subject to additions or deductions per Article 6.



*Initialed*

DocuSign Envelope ID: 6AAF14FA-2245-4D24-ACE8-E8CEBB911770



**Contract**
**SC-15527-032**

## Wage Determination

### DAVIS – BACON ACT

Be advised that as this is a federal project, therefore, the Davis-Bacon Act applies and must be strictly enforced. The Department of Labor requires minimum pre-established prevailing wages and fringe rates be paid to workers on this site as provided in the Wage Determination information attached to this Subcontract Agreement. Effective with the date of subcontract execution, through to final work on site, weekly Certified Payroll Reports (CPRs) are required to be submitted to BESDB each week to **certifiedpayroll@besdesignbuild.com** using federal form WH-347 or similar which are to detail all craft labor and mechanics employed by Subcontractor and any lower-tier Subcontractors working on the site of the work. If no work has been performed by the subcontractor or their lower tier subcontractors during a work week, a "No Work" CPR must be submitted. Payments to the subcontractor will be held until all compliant CPRs for the subcontractor and their lower tier subcontractors have been received and validated covering the period of the subcontractor's pay application. The final CPR submitted by the subcontractor and their lower tier subcontractors must state "Final" in order for final payment to be released to the subcontractor. The certification of the CPRs must be provided by the applicable legal employer representative of the craft labor and/or mechanics listed, and must be notarized. The originals of all CPRs are also to be mailed to BESDB corporate offices located at: 766 Middle Street, Fairhope, AL 36532.

### THE SERVICE CONTRACT ACT OF 1965

The provisions of The Service Contract Act of 1965 are not applicable to this project, and as such, reporting for the provisions of The Service Contract Act of 1965 are not required.

### STATEMENT AND ACKNOWLEDGEMENT FORM (SF-1413)

Within 7 days after award of the contract, the subcontractor shall deliver to the Contractor a completed Statement of Acknowledgment Form (SF 1413) for each subcontract, including the subcontractor's signed and dated acknowledgment that the following clauses: Davis-Bacon Act, Contract Work Hours and Safety Standards Act -- Overtime Compensation, Apprentices and Trainees, Payrolls and Basic Records, Compliance with Copeland Act Requirements, Withholding of Funds, Subcontracts (Labor Standards), Contract Termination -- Debarment, Disputes Concerning Labor Standards, Compliance with Davis-Bacon and Related Act Regulations, and Certification of Eligibility, and such other clauses as the Owner Contracting Officer may, by appropriate instructions, require, and also a clause requiring subcontractors to include these clauses in any lower tier subcontracts.

The Subcontractor shall also have all lower-tier subcontractors performing any construction type work under this subcontract sign and return a completed Statement of Acknowledgment Form (SF 1413) acknowledging the aforementioned clauses.

### ARTICLE 5

### PAYMENT

**5.1      GENERAL PROVISIONS**
**5.1.1      SCHEDULE OF VALUES.** The Subcontractor shall provide a schedule of values satisfactory to the Contractor and the Owner no more than fifteen (15) days from the date of execution of this Agreement.

**5.1.2      ARCHITECT VERIFICATION.** Upon request the Contractor shall give the Subcontractor written authorization to obtain directly from the Architect the percentage of completion certified for the Subcontractor's Work.

**5.1.3      PAYMENT USE RESTRICTION.** Payment received by the Subcontractor shall be used to satisfy the indebtedness owed by the Subcontractor to any person furnishing labor or materials for use in performing the Subcontractor's work on this project before it is used in any other manner.

**5.1.4      PAYMENT USE VERIFICATION.** The Contractor shall have the right at all times to contact the Subcontractor's subcontractors and suppliers to ensure that the same are being paid promptly by the Subcontractor for labor or materials furnished for use in performing the Subcontractor's Work.

**5.1.5      PARTIAL LEIN WAIVERS AND AFFIDAVITS.** As a prerequisite for payment, the Subcontractor shall provide in a form satisfactory to the Owner or the Contractor, partial lien or claim waivers and affidavits from the Subcontractor, and its subcontractors and suppliers for the completed Subcontractor's Work. Such waivers may be made conditional upon payment.

**5.1.6      SUBCONTRACTOR PAYMENT FAILURE.** Upon payment by the Contractor, Subcontractor shall promptly pay its lower-tier subcontractors and material suppliers the amounts to which they are entitled. In the event the Contractor has reason to believe that labor, material or other obligations incurred in the performance of the Subcontractor's Work are not being paid, the Contractor may give written notice of such claim or lien to the Subcontractor and may take any steps deemed necessary to assure that progress payments are utilized to pay such obligations including but not limited to the issuance of joint checks. If upon receipt of said notice, the Subcontractor does not (a) supply evidence to the satisfaction of the Contractor that the moneys owing to the claimant(s) have been paid; or (b) post a bond

Printed On: 12/06/2017  04 :17 PM





**Contract**
**SC-15527-032**

indemnifying the Owner, the Contractor, and the Contractor's surety, if any, and the premises from such claim or lien; then the Contractor shall have the right to withhold from any payments due or to become due to the Subcontractor a reasonable amount to protect the Contractor from any and all loss, damage or expense including attorney's fees arising out of or relating to any such claim or lien until the claim or lien has been satisfied by the Subcontractor.

**5.1.7    SUBCONTRACTOR ASSIGNMENT OF PAYMENTS.** The Subcontractor shall not assign any moneys due or to become due under this Contract, or under any Change Order thereto, without the written consent of Contractor, unless such assignment is intended to create a new security interest within the scope of Article 9 of the Uniform Commercial Code. Should Subcontractor assign all or any part of any moneys due or to become due under this Contract, to create a new security interest or for any other purpose, the instrument of assignment shall contain a clause to the effect that the assignee's right in and to any money due or to become due to the Subcontractor shall be subject to the claims of all persons, firms and corporations for services rendered or materials supplied for the performance of the Work under this Subcontract and any Change Orders.

**5.1.8    PAYMENT NOT ACCEPTANCE.** Payment to the Subcontractor does not constitute or imply acceptance of any portion of the Subcontractor's Work.

**5.2    PROGRESS PAYMENTS**
**5.2.1    APPLICATION.** Subcontractor's application for payment shall be itemized and supported by substantiating data as required in the contract Documents for the Contractor's payment application. Subcontractor's application shall be notarized if required. Subcontract payment applications may include payment requests on account of properly authorized Construction Change Directives. The Subcontractor's progress payment application for work performed in the preceding payment period shall be submitted to the Contractor per the terms of this Agreement and specifically Subparagraphs 5.1.1, 5.2.2, 5.2.3, and 5.2.4 for approval of the Contractor. The Contractor shall forward, without delay, the approved value to the Owner for payment.

**5.2.2    RETAINAGE/SECURITY.** The rate of retainage shall be equal to the percentage retained from the Contractor's payment by the Owner for the Subcontractor's Work, provided the Subcontractor furnishes a bond or other security to the satisfaction of the Contractor.
        If the Subcontractor has furnished such bond or security, its work is satisfactory and the Contract Documents provide for reduction of retainage at a specified percentage of completion, the Subcontractor's retainage shall also be reduced when the Subcontractor's Work has attained the same percentage of completion and the Contractor's retainage for the Subcontractor's Work has been so reduced by the Owner. However if the Subcontractor does not provide such bond or security, the rate of retainage shall be the grater of the two, either 5% or <u>equal to the percentage retained from the Contractors payment.</u>
All invoice requests require the following in order to be processed or they will be rejected:
        1.    Certified Payrolls as applicable
        2.    Lien Waivers (internal and final)
        3.    Invoice
Additionally, all contracts $50,000 and above require a Schedule of Values from which the subcontractor will invoice and they will be required to list on the SOV:
        Close-out documents at 5%
        Final testing, inspection and acceptance at 5%

**5.2.3    TIME OF APPLICATION.** The Subcontractor shall submit progress payment applications to the Contractor no later than the 20th day of each payment period for work performed up to and including the 20th day of the payment period indicating work completed and, to the extent allowed under Subparagraph 5.2.4, materials suitably stored during the preceding payment period.

**5.2.4    STORED MATERIALS.** Unless otherwise provided in the Contract Documents, and if approved in advance by the Owner, applications for payment may include materials and equipment not incorporated in the Subcontractor's Work but delivered to and suitably stored at the site or at some other location agreed upon in writing. Approval of payment applications for such stored items on or off the site shall be conditioned upon submission by the Subcontractor of bills of sale and applicable insurance or such other procedures satisfactory to the Owner and Contractor to establish the Owner's title to such materials and equipment or otherwise protect the Owner's and Contractor's interest therein, including transportation to the site.

**5.2.5    TIME OF PAYMENT.** Progress payments to the Subcontractor for satisfactory performance of the Subcontractor's Work shall be made no later than fourteen (14) days after the Contractor receives payment from the Owner for the Work performed for the invoicing period.

**5.2.6    PAYMENT DELAY.** If for any reason not the fault of the Subcontractor, the Subcontractor does not receive a progress payment from the Contractor within seven (7) days after such payment is due, as defined in Sub-paragraph 5.2.5, then the Subcontractor, upon giving an additional seven (7) days written notice to the Contractor, and without prejudice to and in addition to any other legal remedies, may stop work until payment of the full amount owing to the Subcontractor has been received. To the extent obtained by the Contractor under the Contract Documents, the contract price shall be increased by the amount of the Subcontractor's reasonable cost of shutdown, delay, and start-up, which shall be effected by appropriate Change Order.
        If the Subcontractor's Work has been stopped for thirty (30) days because the Subcontractor has not received progress payments as required hereunder, the Subcontractor may terminate this Agreement upon giving the Contractor an additional seven (7) days written notice.

**5.3    FINAL PAYMENT**

Printed On: 12/06/2017  04 :17 PM


*Initialed*

DocuSign Envelope ID: 6AAF14FA-2245-4D24-ACE8-E8CEBB911770



**Contract**
**SC-15527-032**

**5.3.1    APPLICATION.** Upon acceptance of the Subcontractor's Work by the Owner the Contractor, and if necessary, the Architect; and upon the Subcontractor furnishing evidence of fulfillment of the Subcontractor's obligations in accordance with the Contract Documents and Subparagraph 5.3.2, the Contractor shall forward the Subcontractor's application for final payment without delay.

**5.3.2    REQUIREMENTS.** Before the Contractor shall be required to forward the Subcontractor's application for final payment to the Owner, the Subcontractor shall submit to the Contractor:

    (a)  an affidavit that all payrolls, bills for materials and equipment, and other indebtedness connected with the Subcontractor's Work for which the Owner or its property or the Contractor or the Contractor's surety might in any way be liable, have been paid or otherwise satisfied;

    (b)  consent of surety to final payment, if required;

    (c)  satisfaction of required closeout procedures;

    (d)  certification that insurance required by the Contract Documents to remain in effect beyond final payment pursuant to Paragraph 13.4 is in effect and will not be cancelled or allowed to expire without at least thirty (30) days' written notice to the Contractor unless a longer period is stipulated in the Contract; and

    (e)  other data if required by the Contractor or Owner, such as receipts, releases, and waivers of liens to the extent and in such form as may be designated by the Contractor or Owner. Final payment shall constitute a waiver of all claims by the Subcontractor relating to the Subcontractor's Work, but shall in no way relieve the Subcontractor of liability for the obligations assumed under Paragraph 9.10, or for faulty or defective work appearing after final payment.

**5.3.3    TIME OF PAYMENT.** Final payment of the balance due of the Contract Price shall be made to the Subcontractor:

    (a)  upon receipt of the Owner's waiver of all claims related to the Subcontractor's Work except for unsettled liens, unknown defective work, and noncompliance with the Contract Documents or warranties; and

    (b)  within seven (7) days after receipt by the Contractor of final payment form the Owner for such Subcontractor's Work.

**5.3.4    FINAL PAYMENT DELAY.** If the Owner or its designated agent does not issue a certificate for Final Payment or the Contractor does not receive such payment for any cause which is not the fault of the Subcontractor, the Contractor shall promptly inform the Subcontractor in writing. The Contractor shall also diligently pursue, with the assistance of the Subcontractor, the prompt release by the Owner of the final payment due for the Subcontractor's Work. At the Subcontractor's request and expense, to the extent agreed upon in writing, the Contractor shall institute reasonable legal remedies to mitigate the damages and pursue payment of the Subcontractor's final payment including interest thereon.

**5.4    LATE PAYMENT INTEREST.** To the extent obtained by the Contractor, under the Contract Documents, progress payments or final payment due and unpaid under this Agreement shall bear interest from the date payment is due at the rate provided in the Contract Documents, or, in the absence thereof, at the legal rate prevailing at the place of the Project.

### ARTICLE 6

### CHANGES, CLAIMS AND DELAYS

**6.1    CHANGES.** When the Contractor orders in writing, the Subcontractor, without nullifying this Agreement, shall make any and all changes in the Work which are within the general scope of this Agreement. Adjustments in the Contract Price or Contract time, if any, resulting from such changes shall be set forth in a Subcontract Change Order or a Subcontract Construction Change Directive pursuant to the Contract Documents. No such adjustments shall be made for any changes performed by the Subcontractor that have not been ordered by the Contractor. A Subcontract Change Order is a written instrument prepared by the Contractor and signed by the Subcontractor stating their agreement upon the change in the scope of the Work, adjustment in the contract Price or Schedule of Work. A Subcontract Construction Change Directive is a written instrument prepared by the Contractor directing a change in the Work and stating a proposed adjustment, if any, in the Contract Price or Schedule of Work or both. A Subcontract Construction Change Directive shall be used in the absence of agreement on the terms of a Subcontract Change Order.

**6.2    CLAIMS RELATING TO OWNER.** The Subcontractor agrees to make all claims for which the Owner is or may be liable in the manner and within the time limits provided in the Contract Documents for like claims by the Contractor upon the Owner and in sufficient time for the Contractor to make such claims against the Owner in accordance with the Contract Documents. The Contractor agrees to permit the Subcontractor to prosecute a claim in the name of the Contractor for the use and benefit of the Subcontractor in the manner provided in the Contract Documents for like claims by the Contractor upon the Owner.

**6.3    CLAIMS RELATING TO CONTRACTOR.**
The Subcontractor shall give the Contractor written notice of all claims not included in Paragraph 6.2 within thirty (30) days of the occurrence of the event for which claim is made; otherwise, such claims shall be deemed waived. All unresolved claims, disputes and other matters in question between the Contractor and the Subcontractor not relating to claims included in Paragraph 6.2 shall be resolved in the manner provided in Article 14.

**6.4    ADJUSTMENT IN CONTRACT PRICE.** If a Subcontract Change Order or Construction Change Directive requires an adjustment in the Contract Price, the adjustment shall be established by one of the following methods:

    1.  mutual agreement on a lump sum with sufficient information to substantiate the amount;

Printed On: 12/06/2017  04 :17 PM

Initialed



# Contract
# SC-15527-032

2. unit prices already established in the Contract Documents or if not established by the Contract Documents then established by mutual agreement for this adjustment; or

3. a mutually determined cost plus a jointly acceptable allowance for overhead and profit.

**6.5      SUBSTANTIATION OF ADJUSTMENT.** If the Subcontractor does not respond promptly or disputes the method of adjustment, the method and the adjustment shall be determined by the Contractor on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in the case of an increase in the Contract Price, an allowance for overhead and profit of 15%.

The Subcontractor shall maintain for the Contractor's review and approval an appropriately itemized and substantiated accounting of the following items attributable to the Subcontract Change Order or Subcontract Construction Change Directive:

1. labor costs, including Social Security, health, welfare, retirement and other fringe benefits as normally required, and state worker's compensation insurance;
2. costs of materials, supplies and equipment, whether incorporated in the Work or consumed, including transportation costs;
3. costs of renting, either from the Contractor or from others, of machinery and equipment and other than hand tools;
4. costs of bond and insurance premiums, permit fees and taxes attributable to the change; and
5. costs of additional supervision and field office personnel services necessitated by the change.

**6.6      DELAY.** If the progress of the Subcontractor's Work is substantially delayed without the fault or responsibility of the Subcontractor, then the time for the Subcontractor's Work shall be extended by Subcontract Change Order or Subcontract Construction Change Directive to the extent obtained by the Contractor under the contract Documents and the Schedule of Work shall be revised accordingly.

The Contractor shall not be liable to the Subcontractor for any damages or additional compensation as a consequence of delays caused by any person not a party to this Agreement unless the Contractor has first recovered the same on behalf of the Subcontractor from said person, it being understood and agreed by the Subcontractor that, apart from recovery from said person, the Subcontractor's sole and exclusive remedy for delay shall be an extension in the time for performance of the Subcontractor's Work.

**6.7      LIQUIDATED DAMAGES.** If the Contract Documents provide for liquidated or other damages for delay beyond the completion date set forth in the Contract Documents, and such damages are assessed, then the Contractor may assess same against the Subcontractor in proportion to the Subcontractor's share of the responsibility for such delay. However the amount of such assessment shall not exceed the amount assessed against the Contractor.

Nothing set forth herein shall limit the Subcontractor's liability to the Contractor for the Contractor's actual delay damages caused by the Subcontractor's delay. The Subcontractor shall be liable to the Contractor for the Contractor's actual damages caused by the Subcontractor's delay.

## ARTICLE 7

## CONTRACTOR'S OBLIGATIONS

**7.1      CONTRACT DOCUMENTS.** Prior to executing this Subcontract, the Contractor shall make available to the Subcontractor the Contract Documents which are binding on the Subcontractor and set forth in Paragraph 16.5.

**7.2      AUTHORIZED REPRESENTATIVE.** The Contractor shall designate one or more persons who shall be the Contractors authorized representative(s) on-site and off-site. Such authorized representative(s) shall be the only person(s) the subcontractor shall look to for instructions, orders and/or directions, except in an emergency.

**7.3      STORAGE APPLICATIONS.** The Contractor shall allocate adequate storage areas, if available, for the Subcontractor's materials and equipment during the course of the Subcontractor's Work.

**7.4      TIMELY COMMUNICATIONS.** The Contractor shall transmit, with reasonable promptness, all submittals, transmittals, and written approvals relating to the Subcontractor's Work.

**7.5      NON-CONTRACTED SERVICES.** The Contractor agrees, except as otherwise provided in this Agreement, that no claim for non-contracted construction services rendered or materials furnished shall be valid unless the Contractor provides the Subcontractor notice:

(a) prior to furnishing of the services and materials, except in an emergency affecting the safety of persons or property;
(b) in writing of such claim within three days of first furnishing such services or materials; and
(c) the written charges for such services or materials no later than the fifteenth (15th) day of the calendar month following that in which the claim originated.

## ARTICLE 8

## SUBCONTRACTOR'S OBLIGATIONS

**8.1      OBLIGATIONS DERIVATIVE.** The Subcontractor binds itself to the Contractor under this Agreement in the same manner as the Contractor is bound to the Owner under the Contract Documents, applicable Federal Acquisition Regulations and supplemental agency regulations and will so bind its lower-tier subcontractors. The Subcontractor shall make available to its lower-tier subcontractors the Contract Documents which are binding on the lower-tier subcontractors.

*Initialed*



**Contract**
**SC-15527-032**

**8.2     RESPONSIBILITIES.** The Subcontractor shall furnish all of the labor, materials, equipment, and services, including, but not limited to, competent supervision, shop drawings, samples, tools as are necessary for the proper performance of the Subcontractor's Work in strict accordance with and reasonably inferable from the Contract Documents. The Subcontractor shall provide a list of proposed subcontractors and suppliers, be responsible for taking field dimensions, providing tests, ordering of materials and all other actions as required to meet the Schedule of Work. In accordance with FAR 25.1, the Buy American Statute restricts the purchase of supplies that are not domestic end products.

**8.3     SHOP DRAWINGS.** The Subcontractor shall be responsible to the Contractor for the accuracy and conformity with the Contract Documents and other submittals that pertain to its work in the same manner as the Contractor is responsible therefore to the Owner. Shop drawings, or their approval by the Contractor, shall not be deemed to authorize deviations or substitutions from the requirements of the Contract Documents.

**8.4     TEMPORARY SERVICES.** The Subcontractor shall furnish all temporary services and/or facilities necessary to perform its work, except as provided in Article 16. Said article also identifies those common temporary services, if any, which are to be furnished by the Subcontractor.

**8.5     COORDINATION.** The Subcontractor shall:
   (a)   cooperate with the Contractor and all others whose work may interfere with the Subcontractor's Work;
   (b)   specifically note and immediately advise the Contractor of any such interference with the Subcontractor's Work; and
   (c)   participate in the preparation of coordination drawings and work schedules in areas of congestion.

**8.6     AUTHORIZED REPRESENTATIVE.** The Subcontractor shall designate one or more persons who shall be the authorized Subcontractor's representative(s) on-site and off-site. Such authorized representative(s) shall be the only person(s) to whom the Contractor shall issue instructions, orders or directions, except in an emergency.

**8.7     PROVISION FOR INSPECTION.** The Subcontractor shall notify the Contractor when portions of the Subcontractor's Work are ready for inspection. The Subcontractor shall at all times furnish the Contractor and its representatives adequate facilities for inspecting materials at the site or any place where materials under this Agreement may be in the course of preparation, process, manufacture or treatment.
    The Subcontractor shall furnish to the Contractor, in such detail and as often as required, full reports of the progress of the Subcontractor's Work irrespective of the location of such work. Additionally, Subcontractor shall pay Contractor the cost of any re-inspections due to failure of an inspection on work performed by the Subcontractor.

**8.8     CLEANUP.** The Subcontractor shall follow the Contractor's cleanup and safety directions, and
   (a)   at all times keep the building and premises free from debris and unsafe conditions resulting from the Subcontractor's Work; and
   (b)   broom clean each work area prior to discontinuing work in the same.

If the Subcontractor fails to immediately commence compliance with cleanup duties within twenty-four (24) hours after written notification from the Contractor of non-compliance, the Contractor may implement such cleanup measures without further notice and deduct the cost thereof from any amounts due or to become due the Subcontractor.

**SAFETY.** The prevention of accidents on or in the vicinity of its Work is the Subcontractor's responsibility, even if Contractor establishes a safety program for the entire Project. Subcontractor shall establish a safety program implementing safety measures, policies and standards conforming to those required or recommended by governmental and quasi-governmental authorities having jurisdiction and by the Contractor and Owner, including, but not limited to, requirements imposed by the Contract Documents. Subcontractor shall comply with the reasonable recommendations of insurance companies having an interest in the Project, and shall stop any part of the Work which Contractor deems unsafe until corrective measures satisfactory to Contractor shall have been taken. Contractor's failure to stop Subcontractor's unsafe practices shall not relieve Subcontractor of the responsibility therefore. Subcontractor shall notify Contractor immediately following any accident and promptly confirm the notice in writing. A detailed written report shall be furnished to the Contractor. Subcontractor shall indemnify Contractor for fines, damages or expenses incurred by the Contractor because of the Subcontractor's failure to comply with safety requirements. Subcontractor shall be solely responsible for protection of their persons and property on and about the site of its work, and Subcontractor warrants that it will take the precautions necessary to ensure a safe working environment for the safety of all persons and property on the site that may be affected by their work. Subcontractor understands and acknowledges the potential for contact with hazardous waste or materials in the conduct of the work and certifies that its employees engaged in the work have completed health and safety training courses as specified by the Occupational Safety and Health Administration (OSHA), Environmental Protection Agency (EPA) and respective chapters 29 and 40 of the Code of Federal Regulations (CFR). Subcontractor shall additionally assure its compliance with CONTRACTOR's health and safety policies and procedures, site safety plans or other health and safety rules specified for the work. Subcontractor shall flow down this requirement to any and all lower-tiered subcontractors.

Subcontractor shall provide and maintain work environments and procedures which will: (1) Safeguard the public and CONTRACTOR and Government personnel, property, materials, supplies, and equipment exposed to Subcontractor operations and activities; (2) Avoid interruptions of CONTRACTOR and Government operations and delays in project completion dates; and (3) Control costs in the performance of this subcontract. For these purposes on subcontracts for construction or dismantling, demolition, or removal of improvements, the Subcontractor shall: (1) Provide appropriate safety barricades, signs, and signal lights; (2) Comply with the regulations

Printed On: 12/06/2017  04 :17 PM

*Initialed* 



**Contract**
**SC-15527-032**

issued by the Secretary of Labor at 29 CFR Part 1926 and 29 CFR Part 1910, Federal Acquisition Regulation (FAR), and Veterans Affairs Acquisition Regulation (VAAR); and (3) Ensure that any additional measures CONTRACTOR determines to be reasonably necessary are taken.

If this Subcontract is for construction or dismantling, demolition or removal of improvements with any Department of Veteran Affairs agency or component, the Subcontractor shall comply with all pertinent provisions of the latest version of OSHA, in effect on the date of the solicitation.

Whenever CONTRACTOR becomes aware of any noncompliance with these requirements or any condition which poses a serious or imminent danger to the health or safety of the public or Government personnel, CONTRACTOR shall notify the Subcontractor orally, with written confirmation, and request immediate initiation of corrective action. This notice, when delivered to the Subcontractor or the Subcontractor's representative at the work site, shall be deemed sufficient notice of the noncompliance and that corrective action is required. After receiving the notice, the Subcontractor shall immediately take corrective action. If the Subcontractor fails or refuses to promptly take corrective action, CONTRACTOR may issue an order stopping all or part of the work until satisfactory corrective action has been taken. The Subcontractor shall not be entitled to any equitable adjustment of the Subcontract price or extension of the performance schedule on any stop work order issued under this clause.

Before commencing the work, the Subcontractor shall: (1) submit a written proposed plan for ensuring site safety and accident prevention. The plan shall include an analysis of the significant hazards to life, limb, and property inherent in Subcontract work performance and a plan for controlling these hazards; and (2) meet with representatives of CONTRACTOR to discuss and develop a mutual understanding relative to administration of the overall safety program. The Subcontractor shall reference the safety addendums included; (1) BESDB Safety Manual, (2) Subcontractor Safety Requirements.

Subcontractor shall insert the full text of this article, with appropriate changes in the designation of the parties, in all lower-tier subcontracts.

**8.9      PROTECTION OF THE WORK.** The Subcontractor shall take necessary precautions to properly protect the Subcontractor's Work and the work of others from damage caused by the Subcontractor's operations. Should the Subcontractor cause damage to the Work or property of the Owner, the Contractor or others, the Subcontractor shall promptly remedy such damage to the satisfaction of the Contractor, or the Contractor may so remedy and deduct the cost thereof from any amounts due or to become due the Subcontractor.

**8.10      PERMITS, FEES AND LICENSES.** The Subcontractor shall give adequate notices to authorities pertaining to the Subcontractor's Work and secure and pay for all permits, fees, licenses, assessments, inspections and taxes necessary to complete the Subcontractor's Work in accordance with the Contract Documents.
         To the extent obtained by the Contractor under the Contract Documents, the Subcontractor shall be compensated for additional costs resulting from laws, ordinances, rules, regulations and taxes enacted after the date of the Agreement.

**8.11      SUBCONTRACTOR ASSIGNMENT OF WORK.** The Subcontractor shall not assign the whole nor any part of the Subcontractor's Work without prior written approval of the Contractor. The Contractor's approval shall not be unreasonably withheld. Lower-tier subcontractors and suppliers previously approved by the Contractor may be listed at Paragraph 16.4.

**8.12      NON-CONTRACTED SERVICES.** The Subcontractor agrees, except as other wise provided in this Agreement, that no claim for non-contracted construction services rendered or materials furnished shall be valid unless the Subcontractor provides the contractor notice:
         (a)   prior to furnishing of the services or materials, except in an emergency affecting the safety of persons or property;
         (b)   In writing of such claim within three (3) days of first furnishing such services or materials; and
         (c)   The written charge for such services or materials no later than the fifteenth (15th) day of the calendar month following that in which the claim originated.

**8.13      MATERIALS SAFETY.** To the extent that the Contractor is not obligated by the Contract documents or by law to perform work which involves pollutants, hazardous or toxic substances, hazardous waste, asbestos or PCB's, the Subcontractor likewise is not obligated. To the extent that the Contractor has obligations under the Contract Documents or by law regarding such materials within the scope of the Subcontractor's work, the Subcontractor likewise shall have these obligations.

**ARTICLE 9**

**SUBCONTRACT PROVISIONS**

**9.1      LAYOUT RESPONSIBILITY AND LEVELS.** The contractor shall establish principal axis lines of the building and site whereupon the subcontractor shall lay out and be strictly responsible for the accuracy of the Subcontractor's Work and for any loss or damage to the Contractor or others by reason of the Subcontractor's failure to set out or perform its work correctly. The Subcontractor shall exercise prudence so that the actual final conditions and details shall result in the alignment of finish surfaces.

**9.2      WORKMANSHIP.** Every part of the Subcontractor's Work shall be executed in strict accordance with the Contract Documents in the most sound, workmanlike, and substantial manner. All workmanship shall be of the best of its several kinds, and all materials used in the Subcontractor's Work shall be furnished in ample quantities to facilitate the proper and expeditious execution of the work, and shall be new except such materials as may be expressly provided in the Contract Documents to be otherwise.

Initialed



**Contract**
**SC-15527-032**

**9.3** **MATERIALS FURNISHED BY OTHERS.** In the event the scope of the Subcontractor's Work includes installation of materials or equipment furnished by others, it shall be the responsibility of the Subcontractor to examine the items so provided and thereupon handle, store and install the items with such skill and care as to ensure a satisfactory and proper installation. Loss or damage due to acts of the Subcontractor shall be deducted from any amounts due or to become due the Subcontractor. In accordance with FAR 25.1, the Buy American Statute restricts the purchase of supplies that are not domestic end products.

**9.4** **SUBSTITUTIONS.** No Substitutions shall be made in the Subcontractor's Work unless permitted in the Contract Documents and only then upon the Subcontractor first receiving all approvals required under the Contract Documents for substitutions. The Subcontractor shall indemnify the Contractor as a result of such substitutions, whether or not the Subcontractor has obtained approval thereof.

**9.5** **USE OF CONTRACTOR'S EQUIPMENT.** The Subcontractor, its agents, employees, subcontractors or suppliers shall not use the Contractor's equipment without the express written permission of the Contractor's designated representative.
    If the Subcontractor or any of its agents, employees, suppliers or lower-tier subcontractors utilize any machinery, equipment, tools, scaffolding, hoists, lifts or similar items owned, leased, or under the control of the Contractor, the Subcontractor shall defend, indemnify and be liable to the Contractor as provided in Article 12 for any loss or damage (including personal injury or death) which may arise from such use except where such loss or damage shall be found to have been due solely to the negligence of the Contractor's employees operating such equipment.

**9.6** **CONTRACT BOND REVIEW.** The Contractor's Payment Bond for the Project, if any, may be reviewed and copied by the Subcontractor. Subcontractor is required to provide a Payment and Performance Bond-Back for the total amount of this contract for all contracts $100,000.00 and above unless otherwise noted in the inclusions or exclusions section.

**9.7** **OWNER ABILITY TO PAY.** The Subcontractor shall have the right to receive from the Contractor such information as the Contractor has obtained relative to the Owner's financial ability to pay for the Work.

**9.8** **PRIVITY.** Until final completion of the Project the Subcontractor agrees not to perform any work directly for the Owner or any tenants thereof, or deal directly with the Owner's representatives in connection with the Project, unless otherwise directed in writing by the Contractor. All Work for this Project performed by the Subcontractor shall be processed and handled exclusively by the Contractor.

**9.9** **SUBCONTRACT BOND.** If a Performance and Payment Bond is not required of the subcontractor under Article 16, then within the duration of this Agreement, the Contractor may require such bonds before work is started and the Subcontractor shall provide the same.
    Said bonds shall be in the full amount of this Agreement in a form and by a surety satisfactory to the Contractor.
    The Subcontractor shall be reimbursed without retainage for cost of same simultaneously with the first progress payment hereunder.
    The reimbursement amount for the bonds shall not exceed the manual rate for such subcontractor work.
    In the event the Subcontractor shall fail to promptly provide such requested bonds, the Contractor may terminate this Agreement and re-let the work to another subcontractor and all Contractor costs and expenses incurred thereby shall be paid by the Subcontractor.

**9.10** **WARRANTY.** The Subcontractor warrants its work against all deficiencies and defects in materials and/or workmanship and as called for in the Contract Documents.
    The Subcontractor agrees to satisfy such warranty obligations which appear within the warranty period established in the Contract Documents without cost to the Owner or the Contractor.
    If no warranty is required of the Contractor in the Contract Documents, then the Subcontractor shall warrant its work as described above for the period of one year from the date(s) of substantial completion of all or a designated portion of the Subcontractor's Work or acceptance or use by the Contractor or Owner of designated equipment, whichever is sooner.
    The Subcontractor further agrees to execute any special warranties that shall be required for the Subcontractor's Work prior to final payment.

**ARTICLE 10**

**RECOURSE BY CONTRACTOR**

**10.1** **FAILURE OF PERFORMANCE**

**10.1.1** **NOTICE TO CURE.** If the Subcontractor refuses or fails to supply enough properly skilled workers, proper materials, or maintain the Schedule of Work, or it fails to make prompt payment for its workers, lower-tier subcontractors or suppliers, disregards laws, ordinances, rules, regulations or orders of any public authority having jurisdiction, or otherwise is guilty of a material breach of a provision of this Agreement, the Subcontractor shall be deemed in default of this Agreement. If the Subcontractor fails within three (3) working days after written notification to commence and continue satisfactory correction of such default with diligence and promptness, then the Contractor without prejudice to any rights or remedies, shall have the right to any or all of the following remedies;
    (a)  supply such number of workers and quantity of materials, equipment and other facilities as the Contractor deems necessary for the completion of the Subcontractor's Work; or any part thereof which the Subcontractor has failed to complete or perform after the aforesaid notice, and charge the cost thereof to the Subcontractor, who shall be liable for the payment of same including reasonable overhead, profit and attorney's fees;

Initialed



# Contract
# SC-15527-032

(b)   contract with one or more additional contractors, to perform such part of the Subcontractor's Work as the Contractor shall determine will provide the most expeditious completion of the total Work and charge the cost thereof to the Subcontractor;

(c)   withhold payment of any moneys due the Subcontractor pending corrective action in amounts sufficient to cover losses and compel performance to the extent required by and to the satisfaction of the Contractor; and

(d)   in the event of an emergency affecting the safety of persons or property, the Contractor may proceed as above without notice.

**10.1.2   TERMINATION BY CONTRACTOR.** If the Subcontractor fails to commence and satisfactorily continue correction of a default within three (3) working days after written notification issued under Subparagraph 10.1.1, then the Contractor may, in lieu of or in addition to Subparagraph 10.1.1, issue a second written notification, to the Subcontractor and its surety, if any. Such notice shall state that if the Subcontractor fails to commence and continue correction of a default within seven (7) working days of the written notification, the Agreement will be deemed terminated and the Contractor may use any materials, implements, equipment, appliances or tools furnished by or belonging to the Subcontractor to complete the Subcontractor's Work.

The Contractor also may furnish those materials, equipment and/or employ such workers or subcontractors as the Contractor deems necessary to maintain the orderly progress of the Work.

All costs incurred by the Contractor in performing the Subcontractor's Work, including reasonable overhead, profit and attorney's fees, shall be deducted from any moneys due or to become due the Subcontractor. Additionally, legal action may be taken against Subcontractor for the payment of any amount by which such expenses may exceed the unpaid balance of the Contract Price.

**10.1.3   USE OF SUBCONTRACTOR'S EQUIPMENT.** If the Contractor performs work under this Article or sublets such work to be so performed, the Contractor and/or the persons to whom work has been sublet shall have the right to take and use any materials, implements, equipment, appliances or tools furnished by, belonging or delivered to the Subcontractor and located at the Project.

## 10.2   BANKRUPTCY
**10.2.1   TERMINATION ABSENT CURE.**
If Subcontractor files a petition under the Bankruptcy Code, this Agreement shall terminate if the Subcontractor or the Subcontractor's trustee rejects the Agreement or, if there has been a default or the Subcontractor is unable to give adequate assurance that the Subcontractor will perform as required by this Agreement or otherwise is unable to comply with the requirements for assuming this Agreement under the applicable provisions for the Bankruptcy Code.

**10.2.2   INTERIM REMEDIES.** If the Subcontractor is not performing in accordance with the Schedule of Work at the time a petition for bankruptcy is filed, or at any subsequent time, the Contractor, while awaiting the decision of the Subcontractor or its trustee to reject or to assume this Agreement and provide adequate assurance of its ability to perform hereunder, may avail itself of such remedies under this Article as are reasonably necessary to maintain the Schedule of Work.

The Contractor may offset against any sums due or to become due the Subcontractor all costs incurred in pursing any of the remedies provided hereunder, including but not limited to, reasonable overhead, profit and attorney's fees.

The Subcontractor shall be liable for the payment of any amount by which such expense may exceed the unpaid balance of the Contract Price.

**10.3   SUSPENSION BY OWNER.** Should the Owner suspend its contract with the Contractor or any part which includes the Subcontractor's Work, the contractor shall so notify the Subcontractor in writing and upon written notification the Subcontractor shall immediately suspend the Subcontractor's Work.

In the event of such Owner suspension, the Contractor's liability to the Subcontractor is limited to the extent of the Contractor's recovery on the Subcontractor's behalf under the Contract Documents. The Contractor agrees to cooperate with the Subcontractor, at the Subcontractor's expense, in the prosecution of any Subcontractor claim arising out of an Owner suspension and to permit the Subcontractor to prosecute said claim, in the name of the Contractor, for the use and benefit of the Subcontractor.

**10.4   TERMINATION BY OWNER.** Should the Owner terminate its contract with the Contractor or any part which includes the Subcontractor's Work, the Contractor shall so notify the Subcontractor in writing and upon written notification, this Agreement shall be terminated and the Subcontractor shall immediately stop the Subcontractor's Work, follow all of Contractor's instructions, and mitigate all costs.

In the event of such Owner termination, the Contractor's liability to the Subcontractor is limited to the extent of the Contractor's recovery on the Subcontractor's behalf under the Contract Documents.

The Contractor agrees to cooperate with the Subcontractor, at the Subcontractor's expense, in the prosecution of any Subcontractor claim arising out of the Owner termination and to permit the Subcontractor to prosecute said claim, in the name of the Contractor, for the use and benefit of the Subcontractor, or assign the claim to the Subcontractor.

**10.5   CONTINGENT ASSIGNMENT OF SUBCONTRACT**
The Contractor's contingent assignment of the Subcontract to the Owner, if provided in the contract Documents, is effective when the Owner (a) has terminated the Contract for cause and (b) has accepted the assignment by notifying the Subcontractor in writing. This contingent assignment is subject to the prior rights of a surety that may be obligated under the Contractor's bond, if any. Subcontractor hereby consents to such assignment and agrees to be bound to the assignee by the terms of this Subcontract.

**10.6   SUSPENSION BY CONTRACTOR.** The Contractor may order the Subcontractor in writing to suspend, delay, or interrupt all or any part of the Subcontractor's Work for such period of time as may be determined to be appropriate for the convenience of the Contractor. Phased or interrupted Work when required shall not be deemed a suspension of Work.

*Initialed* 



# Contract
# SC-15527-032

The Subcontractor shall notify the Contractor in writing within ten (10) working days after receipt of the Contractor's order of the effect of such order upon the Subcontractor's Work. To the extent allowed the Contractor under the Contract Documents, the Contract Price or contract time shall be adjusted by Subcontract Change Order for any increase in the time or cost of performance of this Agreement caused by such suspension, delay or interruption.

No claim under this Article shall be allowed for any costs incurred more than ten (10) working days prior to the Subcontractor's notice to the Contractor.

Neither the Contract Price nor the contract time shall be adjusted under this Article for any suspension, delay or interruption to the extent that performance would have been so suspended delayed, or interrupted by the fault or negligence of the Subcontractor or by a cause for which Subcontractor would have been responsible.

The Contract Price shall not be adjusted under this Article for any suspension, delay or interruption to the extent that performance would have been suspended, delayed or interrupted by a cause for which the Subcontractor would have been entitled only to a time extension under this Agreement.

**10.7     WRONGFUL EXERCISE.** If the Contractor wrongfully exercises any option under this Article, the Contactor shall be liable to the Subcontractor solely for the reasonable value of work performed by the Subcontractor prior to the Contractor's wrongful action, including reasonable overhead and profit on the Work performed, less prior payments made, and attorney's fees.

**ARTICLE 11**

**LABOR RELATIONS**

All headings herein are for convenience only and are not to be construed as limitations upon the scope of the paragraphs to which they refer. This Agreement is intended by the parties as the final, complete and exclusive expression of the terms and conditions of their agreement. No prior dealings between the parties and no usage of the trade shall be relevant to supplement this Agreement, and this Agreement shall supersede all other written and/or oral agreements between CONTRACTOR and Subcontractor.
**Other:**
Subcontractor will comply with all provisions of E.O. 11426, and related rules, regulations, and orders of the Secretary of Labor. Additionally, *Subcontractor is required to comply with all flow down clauses of the contract between the Prime contractor and the Owner*
In the event that the Subcontractor does not comply with any of the requirements set forth in this contract, contract may be cancelled, terminated.

**ARTICLE 12**

**INDEMNIFICATION**

**12.1     SUBCONTRACTOR'S PERFORMANCE.** To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless, the Contractor (including the affiliates, parents and subsidiaries, their agents and employees) and other contractors and subcontractors and all of their agents and employees and when required of the Contractor by the Contract Documents, the Owner, the Architect, Architect's consultants, agents and employees from and against claims, damages, loss and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Subcontract that:
  (a)   such any such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Subcontractor's Work itself) including the loss of use resulting therefrom, to the extent caused or alleged to be caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by the Subcontractor or for anyone for whose acts the Subcontractor may be liable, regardless of whether it is caused in part by a party indemnified hereunder;
  (b)   such obligation shall not be construed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Article 12.

**12.2     NO LIMITATION UPON LIABILITY.** In any and all claims against the Owner, the Architect, Architect's consultants, agents and employees, the Contractor (including its affiliates, parents and subsidiaries) and other contractors or subcontractors, or any of their agents or employees, by any employee of the Subcontractor, anyone directly or indirectly employed by the Subcontractor or anyone for whose acts the Subcontractor may be liable, the indemnification obligation under this Article 12 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under worker's or workmen's compensation acts, disability benefit acts or other employee benefit acts.

**12.3     ARCHITECT EXLUSION.** Except as provided by the Contract Documents, the obligation of the Subcontractor under this Article 12 shall not extend to the liability of the Architect, the Architect's consultants, agents or employees of any of them arising out of
  (a)   the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs, or specifications, or
  (b)   the giving of or the failure to give directions or instructions by the Architect, the Architect's Consultants, and agents or employees of any of them provided such giving or failure to give is the primary cause of the injury or damage.

**12.4     COMPLIANCE WITH LAWS.** The Subcontractor agrees to be bound by, and at its own cost, comply with all federal, state and local laws, ordinances, codes and regulations (hereinafter collectively referred to as "laws") applicable to the Subcontractor's Work including, but not limited to, equal employment opportunity, minority business enterprise, women's business enterprise, disadvantaged business enterprise, safety and all other laws with which the Contractor must comply according to the Contract Documents.

*Initialed*



**Contract**
**SC-15527-032**

The Subcontractor shall be liable to the Contractor and the Owner for all loss, cost and expense attributable to any acts of commission or omission by the Subcontractor, its employees and agents resulting from the failure to comply therewith, including, but not limited to, any fines, penalties or corrective measures.

**12.5    PATENTS.** Except as otherwise provided by the Contract Documents, the Subcontractor shall pay all royalties and license fees which may be due on the inclusion of any patented materials in the Subcontractor's Work. The Subcontractor shall defend all suits for claims for infringement of any patent rights arising out of the Subcontractor's Work, which may be brought against the Contractor or Owner, and shall be liable to the contractor and Owner for all loss, including all costs, expenses, and attorney's fees.

### ARTICLE 13

### INSURANCE

**13.1    SUBCONTRACTOR'S INSURANCE.** Prior to start of the Subcontractor's Work, the Subcontractor shall procure for the Subcontractor's Work and maintain in force Workers' Compensation Insurance, Employer's Liability Insurance, Comprehensive or Commercial General Liability Insurance on an occurrence basis, and all insurance required of the Contractor under the Contract Documents.
     The Contractor, Owner and other parties as designated in the Contract Documents shall be named as additional insured on each of these policies except for Workers' Compensation. In respect to Commercial General Liability Insurance, the additional insured status afforded the Contractor, Owner, or other parties shall be written to include coverage for products and completed operations liability coverage. Additional insured coverage shall apply as primary insurance with respect to any other insurance afforded to Contractor or Owner. Contractor's policies will be non-contributory and excess insurance for all acts or omissions or any other liability of Contractor arising out of subcontractor's work performed for them.
     This insurance shall include contractual liability insurance covering the Subcontractor's obligations under Article 12.

**MINIMUM LIMITS OF LIABILITY.** The Subcontractor's Comprehensive or Commercial Liability Insurance and Comprehensive Automobile Liability Insurance, as required by Paragraph 13.1, shall be written with limits of liability not less than the following: Subcontractor shall maintain, at its own expense, and shall require its subcontractors and suppliers to maintain, at their own expense, during the entire performance period under this Subcontract the following minimum valid and collectible insurance.

In accordance with FAR 28.307-2 and FAR 52.228-5, the following minimum coverage shall apply to this contract and must be presented prior to award:
Workers' Compensation and Employer's Liability: Contractors are required to comply with applicable Federal and State Workers' Compensation and Occupational Disease Statutes. If Occupational Diseases are not compensable under those statutes, they shall be covered under the Employer's Liability section of the insurance policy, except when contract operations are so commingled with a Contractor's commercial operations that it would not be practical to require this coverage. Employer's liability coverage of at least $100,000.00 is required, except in States with exclusive or monopolistic funds that do not permit workers' compensation to be written by private carriers.
General Liability: $500,000.00 per occurrences and without any exclusionary clauses for asbestos that would void the general liability coverage.
Automobile liability: $200,000.00 per person; $500,000.00 per occurrence and $20,000.00 property damage.

SUBCONTRACTOR'S PERFORMANCE. To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless, BES Design/Build LLC (including the affiliates, parents and subsidiaries, their agents and employees) and other contractors and subcontractors and all of their agents and employees and when required of the Contractor by the Contract Documents, the Owner, the Architect, Architect's consultants, agents and employees from and against claims, damages, loss and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Subcontract that:
Any such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Subcontractor's Work itself) including the loss of use resulting therefrom, to the extent caused or alleged to be caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by the Subcontractor or for anyone for whose acts the Subcontractor may be liable, regardless of whether it is caused in part by a party indemnified hereunder;
Such obligation shall not be construed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Article 12.
The Subcontractor does hereby agree to indemnify and hold BESDB harmless from any and all damages, liability or costs, including reasonable attorneys' fees and costs of defense, arising from the subcontractors negligent acts, errors or omissions in the performance of its services under this agreement or any of its agents, employees, sub-subcontractors, assigns, or any other entity acting for or on behalf of the subcontractor.
In addition, the subcontractor does hereby indemnify and hold BESDB harmless to the same extent and on the same basis as BESDB has indemnified and held the Owner harmless under the terms and conditions of the Prime Contract, but only to the extent of the services to be performed by the subcontractor

NO LIMITATION UPON LIABILITY. In any and all claims against the Owner, the Architect, Architect's consultants, agents and employees, the Contractor (including its affiliates, parents and subsidiaries) and other contractors or subcontractors, or any of their agents or employees, by any employee of the Subcontractor, anyone directly or indirectly employed by the Subcontractor or anyone for whose acts the Subcontractor may be liable, the indemnification obligation shall not be limited in any way by any limitation on the amount or type of

Initialed

DocuSign Envelope ID: 6AAF14FA-2245-4D24-ACE8-E8CEBB911770



# Contract
# SC-15527-032

damages, compensation or benefits payable by or for the Subcontractor under worker's or workmen's compensation acts, disability benefit acts or other employee benefit acts.

ARCHITECT EXCLUSION. Except as provided by the Contract Documents, the obligation of the Subcontractor shall not extend to the liability of the Architect, the Architect's consultants, agents or employees of any of them arising out of the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs, or specifications, or the giving of or the failure to give directions or instructions by the Architect, the Architect's Consultants, and agents or employees of any of them provided such giving or failure to give is the primary cause of the injury or damage.

COMPLIANCE WITH LAWS. The Subcontractor agrees to be bound by, and at its own cost, comply with all federal, state and local laws, ordinances, codes and regulations (hereinafter collectively referred to as "laws") applicable to the Subcontractor's Work including, but not limited to, equal employment opportunity, minority business enterprise, women's business enterprise, disadvantaged business enterprise, safety and all other laws with which the Contractor must comply according to the Contract Documents.
The Subcontractor shall be liable to the Contractor and the Owner for all loss, cost and expense attributable to any acts of commission or omission by the Subcontractor, its employees and agents resulting from the failure to comply therewith, including, but not limited to, any fines, penalties or corrective measures.

A. Worker's Compensation and Employers Liability Insurance in an amount not less than $100,000 or as prescribed by applicable law, including insurance covering liability under the Longshoremen's and Harbor Worker's Act and the Jones Act, if applicable.
B. Comprehensive General Bodily Injury and Broad Form Property Damage Liability Insurance. Such insurance shall include the following coverages: Broad Form Contractual Liability, Personal Injury Liability, Completed Operations, and Products Liability. The limit of liability shall not be less than $1,000,000 combined single limit per occurrence
C. Automobile Bodily Injury and Property Damage Liability Insurance. Such insurance shall extend to owned, non-owned, and hired automobiles used in the performance of this subcontract. The limit of liability shall not be less than $1,000,000 combined single limit per occurrence.
D. Pollution Insurance for liability stemming from releases of hazardous substances and pollutants resulting in damage to the environment and property (including environmental impairment, both sudden and gradual).
E. Other Requirements:
    (i) **Named Insured: BES Design-Build LLC and Owner shall be named as additional insured.**
    (ii) Waiver of Subrogation: All policies shall be endorsed to provide that underwriters and insurance companies of Subcontractor shall not have any right of subrogation against CONTRACTOR or Owner or any of its parents, subsidiaries, agents, employees, invitees, servants, subcontractors, insurers, underwriters, and such other parties as they may designate and shall contain cross liability and severability of interests provisions.
    (iii) Primary Insurance: All policies shall be endorsed to provide that coverage provided by Subcontractor's insurance shall always be primary coverage as respects any insurance maintained by CONTRACTOR or Owner.
    (iv)Notice of Cancellation: All policies shall be endorsed to provide that 30 days prior written notice shall be given CONTRACTOR in the event of cancellation or material change in the policies.
    (v) The Subcontractor and its subcontractors at all times shall waive any right of recovery against CONTRACTOR and the Owner or any of their parents, subsidiaries, agents, employees, invitees, servants, subcontractors, insurers, underwriters, and such other parties as they may designate for loss or damage covered by insurance required by this subcontract.
    (vi)Certificates: Subcontractor shall furnish Certificates of insurance evidencing insurance required hereunder before the start of any work and upon request, shall furnish copies of the actual policies. Any failure of Subcontractor to provide the requisite insurance certificates shall not be construed as a waiver of Subcontractor's obligation to do so.

Subcontractor's compliance with the above insurance provisions shall not constitute a limitation of liability or in any way limit or affect Subcontractor's indemnification obligations under this Agreement. CONTRACTOR reserves the right to require additional insurance or coverage amounts for the policies above based on its evaluation of specific project criteria.

**13.2    NUMBER OF POLICIES.** Comprehensive or Commercial General Liability Insurance and other liability insurance may be arranged under a single policy for the full limits required or by a combination of underlying policies with the balance provided by an Excess or Umbrella Liability Policy.

**13.3    CANCELLATION, RENEWAL OR MODIFICATION.** The Subcontractor shall maintain in effect all insurance coverage required under this Agreement at the Subcontractor's sole expense and with insurance companies acceptable to the Contractor.
    All insurance policies shall contain a provision that the coverages afforded thereunder shall not be cancelled or not renewed, nor restrictive modifications added, until at least thirty (30) days prior written notice has been given to the Contractor unless otherwise specifically required in the Contract Documents.
    Certificate of Insurance, or certified copies of policies acceptable to the Contractor, shall be filed with the Contractor prior to the commencement of the Subcontractor's Work.
    In the event the Subcontractor fails to obtain or maintain any insurance coverage required under this Agreement, the Contractor may purchase such coverage and charge the expense thereof to the Subcontractor, or terminate this Agreement.
    The Subcontractor shall continue to carry liability insurance for at least one year after final payment. The Subcontractor shall furnish the Contractor evidence of such insurance at final payment and one year thereafter.

Initialed 



**Contract
SC-15527-032**

**13.4     WAIVER OF RIGHTS.** The Contractor and Subcontractor waive all rights against each other and the Owner, the Architect, the Architect's consultants and agents or employees of any of them, separate contractors, and all other subcontractors for loss or damage to the extent covered by Builder's Risk or any other property or equipment insurance, except such rights as they may have to the proceeds of such insurance; provided, however, that such waiver shall not extend to the acts of the Architect, the Architect's consultants, and the agents or employees of any of them listed in Paragraph 12.3.

Upon written request of the Subcontractor, the Contractor shall provide the Subcontractor with a copy of the Builder's Risk policy of insurance or any other equipment insurance in force for the Project and procured by the Contractor. The Subcontractor shall satisfy itself to the existence and extent of such insurance prior to commencement of the Subcontractor's Work.

If the Owner or Contractor have not purchased Builder's Risk insurance for the full insurable values of the Subcontractor's Work less a reasonable deductible, then the Subcontractor may procure such insurance as will protect the interests of the Subcontractor, its subcontractors and their subcontractors in the Work, and, by appropriate Subcontractor Change Order, the cost of such additional insurance shall be reimbursed to the Subcontractor.

If not covered under the Builder's Risk policy of insurance or any other property or equipment insurance required by the Contract Documents, the Subcontractor shall procure and maintain at the Subcontractor's own expense property and equipment insurance for portions of the Subcontractor's Work stored off the site or in transit, when such portions of the Subcontractor's Work are to be included in an application for payment under Article 5.

**13.5     ENDORSEMENT.** If the policies of insurance referred to in this Article require an endorsement to provide for continued coverage where there is a waiver of subrogation, the owners of such policies will cause them to be so endorsed.

## ARTICLE 14

## ARBITRATION

**14.1     AGREEMENT TO ARBITRATE.** All claims, disputes and matters in question arising out of, or relating to, this Agreement or the breach thereof, except for claims which have been waived by the making or acceptance of final payment, and the claims described in Paragraph 14.2, shall be decided by binding arbitration in accordance with the Contraction industry Arbitration Rules of the American Arbitration Association then in effect unless the parties mutually agree otherwise. Notwithstanding other provisions in the Agreement, this agreement to arbitrate shall be governed by the Federal Arbitration Act.

**14.2     EXCEPTIONS.** The agreement to arbitrate shall not apply to any claim:
(a)  of contribution or indemnity asserted by one party to this Agreement against the other party and arising out of an action brought in a state or federal court or in arbitration by a person who is under no obligation to arbitrate the subject matter of such action with either of the parties hereto or does not consent to such arbitration; or
(b)  asserted by the Subcontractor against the Contractor if the Contractor asserts said claim, either in whole or part against the Owner, or asserted by the Owner against the Contractor, when the contract between the Contractor and Owner does not provide for binding arbitration, or does so provide but the two arbitration proceedings are not consolidated, or the Contactor and Owner have not subsequently agreed to arbitrate said claim. In either case the parties hereto shall notify each other either before or after demand for arbitration is made.
In any dispute arising over the application of this Paragraph 14.2, the question of arbitrability shall be decided by the appropriate court and not by arbitration.

**14.3     INITIAL DISPUTE RESOLUTION.** If a dispute arises out of or relates to this Agreement, or the breach thereof, the parties shall endeavor to settle the dispute first through direct discussions. If the dispute cannot be settled through direct discussions, the parties shall endeavor to settle the dispute by mediation under the Construction Industry Mediation Rules of the American Arbitration Association before recourse to arbitration. Mediation will be commenced within the time limits for arbitration stipulated in the Contract Documents. The time limits for any subsequent arbitration will be extended for the duration of the mediation process plus ten (10) days or as otherwise provided in the contract Documents. Issues to be mediated are subject to the exceptions in Paragraph 14.2 for arbitration. The location of the mediation shall be the same as the location for arbitration identified in Paragraph 14.4.

The arbitration proceeding shall be conducted according to the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA"). However, the parties are not required to engage the services of the AAA to administer the arbitration proceeding. In any dispute that is referred to binding arbitration, the prevailing party shall be entitled to recover all costs and attorney's fees incurred in the arbitration proceeding. The final hearing of any arbitration proceeding under this Agreement shall be held in a mutually agreeable location.

**14.4     NOTICE OF DEMAND.** Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the mutually agreed upon Arbitration Association. The demand for arbitration shall be made as required in the Contract Documents or within a reasonable time after written notice of the claim, dispute or other matter in question has been given, but in no event shall it be made when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitation, whichever shall first occur. The location of the arbitration proceedings shall be in the State of Alabama.

**14.5     AWARD.** The award rendered by the arbitrator(s) shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

*Initialed* _____



**Contract**
**SC-15527-032**

**14.6    WORK CONTINUATION AND PAYMENT.** Unless otherwise agreed in writing, the Subcontractor shall carry on the Work and maintain the Schedule of Work pending arbitration. If the Subcontractor is continuing to perform, the Contractor shall continue to make payments in accordance with this Agreement.

**14.7    NO LIMITATION OF RIGHTS OR REMEDIES.** Nothing in this Article shall limit any rights or remedies not expressly waived by the Subcontractor which the Subcontractor may have under lien laws or payment bonds.

**14.8    SAME ARBITRATORS.** To the extent not prohibited by their contracts with others, the claims and disputes of the Owner, Contractor, Subcontractor and other subcontractors involving a common question of fact or law shall be heard by the same arbitrator(s) in a single proceeding.

## ARTICLE 15

### CONTRACT INTERPRETATION

**15.1    INCONSISTENCIES AND OMISSIONS.** Should inconsistencies or omissions appear in the Contract Documents; it shall be the duty of the Subcontractor to so notify the Contractor in writing within three (3) working days of the Subcontractor's discovery thereof. Upon receipt of said notice, the Contractor shall instruct the Subcontractor as to the measures to be taken and the Subcontractor shall comply with the Contractor's instructions.

**15.2    LAW AND EFFECT.** This Agreement shall be governed by the law of the state noted in the Architect–Engineer address on the Prime contract.

**15.3    SEVERABILITY AND WAIVER.** The partial or complete invalidity of any one or more provisions of this Agreement shall not affect the validity or continuing force and effect of any other provision. The failure of either party hereto to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this Agreement, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right as respects further performance.

**15.4    ATTORNEY'S FEES.** Should either party employ an attorney to institute suit or demand arbitration to enforce any of the provisions hereof, to protect its interest in any matter arising under this Agreement, to collect damages for the breach of the Agreement, or to recover on a surety bond given by a party under this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees, costs, charges, and expenses expended or incurred therein.

**15.5    TITLES.** The titles given to the Articles of this Agreement are for ease of reference only and shall not be relied upon or cited for any other purpose.

**15.6    ENTIRE AGREEMENT.** This Agreement is solely for the benefit of the signatories hereto and represents the entire and integrated agreement between the parties hereto and supersedes all prior negotiations, representations, or agreements, either written or oral.

## ARTICLE 16

### SPECIAL PROVISIONS

**16.1    PRECEDENCE.** It is understood the work to be performed under this Agreement, including the terms and conditions thereof, is as described in Articles 1 through 16 together with the following Special Provisions, which are intended to complement same. However, in the event of any inconsistency, these Special Provisions shall govern.

    1. Subcontract Agreement, Recitals through Signatures, Pages 1-14
    2. Davis-Bacon Wage Determination (16.4)
    3. Prime Contract Flow-Down Requirements (16.4)
    4. General Terms and Conditions, (Article 2-15)
    5. Statement of Work and Schedule (Article 2-3)
    6. Compensation and Payment (Article 4-5)
    7. Certificate of Release and Indemnity

**16.2    SCOPE OF WORK.** All work necessary or incidental in strict accordance with and reasonably inferable from the Contract Documents and as more particularly, though not exclusively, specified in **the contract documents** with the following clarifications:
- Superintendent to be on site at all times.
- Subcontractor to provide daily cleanup and safety inspections
- Comply with all current OSHA and Health Standards for the Construction Industry.
- All workers must have OSHA 10 hour certification and attend the VA infectious Disease Training
- Comply with all local, State and Federal Environmental Requirements.
- Superintendent/Project Manager to attend all coordination meetings when performing work onsite.
- Provide Daily Reports and Weekly Work Schedule.
- SCOPE: See Inclusions/Exclusions/Descriptions.

Initialed

DocuSign Envelope ID: 6AAF14FA-2245-4D24-ACE8-E8CEBB911770



**Contract**
**SC-15527-032**

**16.3**    **COMMON TEMPORARY SERVICES.** The following "Project" common temporary services and/or facilities are for the use of all project personnel and shall be furnished as herein below noted:

By this Subcontractor; including but not limited to: Phones.

By others; water, electricity. Water and electricity to be provided at the facility, no remote capabilities (i.e., generators) to be provided.

**16.4**    **OTHER SPECIAL PROVISIONS.**

**1. Certified Payroll weekly**
**Certified Payroll Instructions:**
Subcontractor is to provide certified payroll copies to the Contractor on a weekly basis beginning with the first day worked and shall continue until the Subcontractors work is complete. Subcontractor shall distribute to the following:
- 1 email copy of certified payroll and invoice to jbanach@besdesignbuild.com; atapio@besdesignbuild.com
- Pay Application can be emailed to: accountspayable@besdesignbuild.com
- 1 original with the invoice to the billing location listed below:

    **BES Design/Build LLC**
    **Attn: Accounts Payable**
    **PO Box 2263**
    **Fairhope, AL 36533**

If the Subcontractor fails to provide all certified payrolls and statement of compliance as required under this subcontracts Section I wage determination clause, Contractor shall withhold payments to the Subcontractor until such violations have been corrected. Certified Payroll and Statement of Compliance of certified payroll can be submitted on the standard Government WH-347 Form which can be found at the US Department of Labor Website.

1. All submittals are to be received by BES Design/Build LLC, within Ten (10) working days of receipt of a Notice to Proceed.

2. Cancellation clause on the Certificate of Insurance shall read: "Should any of the above described policies be cancelled or have any material changes adversely affecting The BES Design/Build LLC, interest before the expiration date thereof, the issuing company will mail 30 days written notice to the certificate holder". The BES Design/Build, LLC will be named as additional insured. This certificate should be job specific.

**16.5**    **CONTRACT DOCUMENTS**
1. Scope of Work Proposal
2. Project RFP
3. Standard Form 1413
4. Subcontractor Safety Requirements Letter
5. Activity Hazard Analysis Form

*The terms and conditions of this contract are not to be changed either manual or electronic. Any changes to the official printed language of this contract shall void the entire agreement.*
*Attachments are for reference only and do not release the subcontractor noted in this contract from the requirements of this contract or the requirements of the flow down clauses of the prime contract.*
**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement under seal, the day and year first above written

**BES Design Build, LLC**
766 Middle St.
Fairhope, Alabama 36532

**IHP Industrial, Inc. - Little Rock**
3201 East Kiehl Avenue - PO Box 938
N Little Rock, Arkansas 72115

| | | |
|---|---|---|
| *W Belton* | 12/12/2017 | |
| **SIGNATURE** | **DATE** | |
| *Joseph L. Banach III* | 12/11/2017 | |
| **SIGNATURE** | **DATE** | |

**SIGNATURE**    John Fitzpatrick                12/07/2017
                 Vice President                **DATE**

DocuSign Envelope ID: 6AAF14FA-2245-4D24-ACE8-E8CEBB911770





Service Disabled Veteran Owned Small Business

## Acknowledgement of New Contract Instructions

The undersigned has received and reviewed the BES Design Build, LLC, **New Contract Packet**. The undersigned understands that these are legal requirements and all forms and submissions must be completed and sent to the appropriate department at BES Design Build, LLC.

I understand that BES Design Build, LLC must be informed of all 2nd or 3rd Tier contractors and of all suppliers.

_____
Signature

____12/07/2017_____
Date

___John Fitzpatrick_____
Full Name

___IHP Industrial Inc_____
Business Name

___Vice President_____
Title